IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2017 Session

## CHARLES JOSEPH TOOLEY v. PAMELA M. HOWEY TOOLEY

**Appeal from the Circuit Court for Sumner County**
**No. 2014-CV-1366      Joe Thompson, Judge**

_____

**No. M2017-00610-COA-R3-CV**

_____

In this divorce, the husband appeals the trial court's award of alimony in futuro, the amount of alimony awarded, and the allocation of marital debt. Concluding that the evidence does not preponderate against the trial court's findings and that the trial court did not abuse its discretion in applying relevant legal principles, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Charles Joseph Tooley.

Melanie R. Bean, Lebanon, Tennessee, for the appellee, Pamela M. Howey Tooley.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Charles Joseph Tooley ("Husband") and Pamela M. Howey Tooley ("Wife") were married on February 19, 1991. At the time of trial, they had one minor child from the marriage, Noah, born in January 2000, and one adult child who is severely disabled, Caitlyn,[1] born in February 1994.[2] After twenty-three years of marriage, Husband filed for divorce on two grounds. He also filed a petition seeking a conservatorship for Caitlyn, which the trial court consolidated with the divorce action. Wife filed an answer and counter-complaint based on three grounds.

---

[1] Caitlyn's name also appears in the record as "Kaitlyn."

[2] The parties have two other children born of the marriage, both of whom are adults and not subjects of this appeal.

Contemporaneously with filing her answer, Wife filed a motion seeking pendente lite support, adoption of her temporary parenting plan, exclusive use of the marital home, and an order requiring Husband to make certain repairs to the home. The trial court entered an agreed order on May 14, 2015, in which the parties agreed that Husband would have access to the marital home, make specified repairs to the marital home, and pay Wife $250.00 per week. The parties further agreed that Wife would receive Caitlyn's Supplemental Security Income ("SSI") benefit in the amount of $733.00 per month and would be responsible for food, fuel, clothing, and school expenses, as well as the minimum payments on the credit cards listed in her name.

The trial court heard the case on November 10, 2016. As a preliminary matter, the court heard from the guardian ad litem ("GAL") in the conservatorship action. The GAL described Caitlyn as "emotional," explaining that she has outbursts and "throws fits" when there are disruptions to her schedule, such as when strangers come into the home. In regard to Caitlyn's level of disability, the GAL stated that she "has the ability to do some things, but she needs help with a lot of things." For example, she needs help getting dressed because "certain items of female clothing can be a challenge for her" and, while Caitlyn is capable of feeding herself, she is unable to prepare her own meals. The GAL reported that Caitlyn is "semi-verbal" but difficult to understand. When asked by the trial court about Caitlyn's need for daily supervision, the GAL responded that "she basically needs to have an adult with her at all times."

At the time of trial, Husband was fifty-eight years old. He has a high school diploma and works as a service technician for Cushman & Wakefield earning $22.15 per hour. He testified that he has worked for Cushman & Wakefield for seventeen years and does not anticipate any promotions or pay raises. According to Husband, the parties struggled financially throughout the marriage. He was the sole financial provider for the family and worked as much overtime as possible. Seven years prior to trial, the parties discussed Wife obtaining employment in order to assist the family financially. Husband explained that Wife considered enrolling in an online program to learn how to do medical billing or medical transcription so she could work from the home; however, she did not pursue this training during either the marriage or the parties' two-year separation.

Husband agreed that Caitlyn needed someone to take care of her. He testified that Noah, not Wife, usually acted as Caitlyn's primary caregiver because Wife exercised three or four hours per day. During cross-examination, however, he admitted that the only care he knew that Noah provided for Caitlyn was assisting Wife in the tasks of cooking breakfast, changing the television channel, and turning on Caitlyn's iPad. Husband admitted that he had only gone to the marital residence to visit with Caitlyn and Noah a maximum of fifteen times between January and November of 2016. He acknowledged that he needed to visit Caitlyn more consistently so she could become more comfortable with his visits.

Finally, Husband testified that Wife amassed over $20,000 in credit card debt. He stated he was unaware of the amount of the debt or the number of credit cards Wife had been using until discovery. Husband attributed the large debt to Wife's shopping addiction. He introduced into evidence photographs of closets full of clothing, some still in wrappers, and shopping bags full of more clothes that still had the sales tags on them.

Wife was forty-seven years old at the time of trial. She attended college for three years but did not graduate. Prior to the marriage, Wife worked at Toys R Us earning $6.00 per hour. During the marriage, she did not work outside the home. Instead, she acted as the primary caregiver for the parties' children. Wife testified that she homeschooled Noah and served as Caitlyn's primary caregiver. In December 2011, Wife was diagnosed with breast cancer. Although she had no active cancer at the time of trial, she was still undergoing reconstructive treatment. She denied having a shopping addiction, explaining that most of the clothes in the photographs submitted by Husband were items she had gathered for a consignment sale. She stated that the photographs were taken close to Christmas and the items with tags still on them were purchased as presents for their children.

Wife admitted that, during the marriage, she and Husband discussed her completing online classes for medical billing or medical transcription. According to Wife, she completed paperwork with a career institute to take the online classes and then asked Husband to pay for them, but he refused. Wife stated that she inquired about Pell grants to pay for the classes and learned that she did not qualify "because of income." After Husband filed for divorce, Wife again researched online classes for medical billing or medical transcription. She testified that, even if she took the online classes, there was no guarantee that she would obtain employment that would permit her to work from home. She further testified that she could not work outside of the home because she needed to care for Caitlyn at home.

Wife explained that she could not hire someone to watch Caitlyn because Caitlyn does not respond well to strangers or unfamiliar situations. She agreed with the GAL's description of Caitlyn's response to strangers and attributed the emotional outbursts to Caitlyn's need for "structure and routine." To avoid emotional outbursts, Wife must prepare Caitlyn days in advance before deviations in her routine occur, such as attending dental appointments. Wife prepares Caitlyn by talking to her beforehand and relaxing her by persuading Caitlyn "to color pictures for people." Despite this preparation, Caitlyn sometimes still has emotional outbursts when her routine is altered. Wife explained that Caitlyn's outbursts also can sometimes occur in response to simple matters such as dressing her: "If you go to get her dressed – go get her to get her clothes on, she may throw it back at you. . . . She'll get upset so sometimes you just have to walk away and then come back and try again, walk away, come back and try it again." Finally, Wife stated that, even if Caitlyn did not respond negatively to strangers or unfamiliar

situations, she still could not hire someone to watch Caitlyn because she could not afford to do so.

The trial court entered a final decree of divorce on February 22, 2017. In the final decree, the trial court appointed Wife as the conservator of Caitlyn, established her as the primary residential parent, and adopted her proposed parenting plan, pursuant to which Father had eighty days of parenting time per year. The court found that Caitlyn is "severely disabled" as contemplated by Tenn. Code Ann. § 36-5-101(k)(2)[3] and ordered Husband to pay $1,140 per month in child support. The trial court awarded Wife the marital residence, stating that she would be responsible for the $95,466.57 mortgage associated with the property. In regard to the parties' marital debt, the court ordered that Wife would be responsible for $5,240 of credit card debt and Husband would be responsible for the remaining marital debt, which was $48,000.[4] Wife would also be responsible for a separate debt in the amount of $41,840.[5] Finally, the trial court awarded Wife alimony in futuro in the amount of $1,300 per month.

On appeal, Husband presents the following issues for our review: whether the trial court abused its discretion (1) in awarding Wife alimony in futuro, (2) in determining the amount of alimony, and (3) in requiring Husband to pay the consumer credit card debts incurred by Wife.

---

[3] Tennessee Code Annotated section 36-5-101(k) provides:

(1) Except as provided in subdivision (k)(2), the court may continue child support beyond a child's minority for the benefit of a child who is handicapped or disabled, as defined by the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), until such child reaches twenty-one (21) years of age.

(2) Provided, that such age limitation shall not apply if such child is severely disabled and living under the care and supervision of a parent, and the court determines that it is in the child's best interest to remain under such care and supervision and that the obligor is financially able to continue to pay child support. In such cases, the court may require the obligor to continue to pay child support for such period as it deems in the best interest of the child; provided, however, that, if the severely disabled child living with a parent was disabled prior to this child attaining eighteen (18) years of age and if the child remains severely disabled at the time of entry of a final decree of divorce or legal separation, then the court may order child support regardless of the age of the child at the time of entry of the decree.

[4] Husband filed a Chapter 13 bankruptcy petition on June 12, 2017. The Bankruptcy Court for the Middle District of Tennessee confirmed Husband's Chapter 13 plan on August 8, 2017.

[5] Wife testified that this loan was a parent plus loan taken out to pay college tuition for the parties' oldest daughter, Rachel.

Wife presents only one issue: whether she should be awarded her attorney fees incurred on appeal.

STANDARD OF REVIEW

Our review of the trial court's findings of fact is de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Nelson v. Nelson*, 106 S.W.3d 20, 22 (Tenn. Ct. App. 2002). Evidence preponderates against the trial court's findings of fact when it "support[s] another finding of fact with greater convincing effect." *Hopwood v. Hopwood*, No. M2015-01010-COA-R3-CV, 2016 WL 3537467, *4 (Tenn. Ct. App. June 23, 2016) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). We review a trial court's conclusions of law de novo, according them no presumption of correctness. *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Nelson*, 106 S.W.3d at 22.

A trial court has "broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration." *Owens v. Owens*, 241 S.W.3d 478, 493 (Tenn. Ct. App. 2007). As the Tennessee Supreme Court has explained:

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (footnote omitted). Because the trial court's spousal support determination is a discretionary decision, we "presume that the decision is correct" and "review the evidence in the light most favorable to the decision." *Id.* at 105-06; *see also Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011).

ANALYSIS

1. Alimony Award

A. Type of Alimony

Husband contests both the type and amount of the alimony award. He first argues that the trial court abused its discretion in awarding Wife alimony in futuro rather than rehabilitative alimony. Specifically, he asserts that the trial court failed to find that rehabilitation was not feasible before awarding alimony in futuro.

Tennessee law recognizes four types of spousal support: 1) rehabilitative alimony, 2) alimony in futuro, 3) transitional alimony, and 4) alimony in solido. Tenn. Code Ann. § 36-5-121(d)(1); *Gonsewski*, 350 S.W.3d at 107. The Tennessee Supreme Court has described the types of spousal support as follows:

> Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. Alimony in solido, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce.
>
> Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person."

*Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012) (citations omitted).

Tennessee Code Annotated section 36-5-121(d)(2) reflects a legislative preference in favor of rehabilitative alimony over alimony in futuro whenever it is possible to rehabilitate an economically disadvantaged spouse. *Owens*, 241 S.W.3d at 493. "Rehabilitated" is defined as

achiev[ing], with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(d)(2). Despite the legislative preference for rehabilitative support, however, a court may award alimony in futuro when it "finds that economic rehabilitation is not feasible and long-term support is necessary." *Gonsewski*, 350 S.W.3d at 109.

When determining the nature, amount, length of term, and manner of payment of support, courts are to consider the following factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

In the present case, the trial court weighed the following relevant factors: the relative earning capacities and needs of the parties; the relative ability of each party to secure education and training; the duration of the marriage; the provisions made with regard to the marital property; the parties' standard of living during the marriage; and other necessary factors relevant to the equities between the parties. Next, the court reasoned that:

> [T]here are significant factors that weigh in favor of an award of alimony *in futuro*. Specifically, the Wife has never worked outside of the home during the parties' marriage and she will have tremendous ongoing responsibilities caring for the parties' daughter that preclude her from entering the workforce on a full-time basis. Given the disparity in earning capabilities between the Husband and Wife, the Court finds that the Wife is at an economic disadvantage and has a need for alimony.

The trial court then awarded Wife alimony in futuro in the amount of $1,300 per month.

Husband is correct that the trial court's order does not explicitly find that economic rehabilitation is not feasible. This Court recently addressed a similar situation in *Wills v. Wills*, No. M2015-01639-COA-R3-CV, 2016 WL 2937358 (Tenn. Ct. App. May 16, 2016). In *Wills*, the trial court weighed the relevant statutory factors and found that the wife was economically disadvantaged relative to the husband and that he had the ability to pay alimony. *Wills*, 2016 WL 2937358, at *2. The trial court then awarded the wife alimony in futuro in the amount of $5,400, reasoning that long-term support was appropriate "given the Wife's age and limited education and work experience." *Id.* We vacated the award of alimony in futuro because "any finding regarding economic rehabilitation" was "[e]ntirely absent from the trial court's order." *Id.* at *4.

The award of alimony in futuro in this case is distinguishable from that in *Wills*. Here, the trial court awarded Wife alimony in futuro after finding that "Wife has never

worked outside of the home during the parties' marriage and she will have tremendous ongoing responsibilities caring for the parties' daughter *that preclude her from entering the workforce on a full-time basis*." (Emphasis added). Although the trial court did not explicitly state that economic rehabilitation is not feasible, this language is a finding regarding economic rehabilitation. Because Wife is precluded from working full-time due to her responsibilities caring for Caitlyn, she cannot achieve an earning capacity that provides her a post-divorce standard of living comparable to that enjoyed during the marriage or to that enjoyed post-divorce by Husband. *See* Tenn. Code Ann. § 36-5-121(d)(2). Thus, the trial court implicitly found that economic rehabilitation is not feasible.

A thorough examination of the record shows that the evidence preponderates in favor of the trial court's finding. Wife testified that she could not work outside of the home because she needed to be there to care for Caitlyn. The GAL corroborated this testimony by reporting that Caitlyn needs adult supervision at all times. Moreover, it is not possible for Wife to hire someone to stay with Caitlyn because Wife cannot afford it and, even if she could afford it, Caitlyn has emotional outbursts when confronted with strangers or unfamiliar situations due to her need for structure and routine. In light of the foregoing, we conclude that the trial court did not abuse its discretion in awarding Wife alimony in futuro.

### B. Amount of Alimony

With respect to the amount of alimony, Husband contends that the trial court abused its discretion when determining his ability to pay. Although a court must consider each relevant statutory factor, the two most important considerations are "'the disadvantaged spouse's need and the obligor spouse's ability to pay.'" *Gonsewski*, 350 S.W.3d at 110 (quoting *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). We will first consider Wife's need for alimony. She testified that her monthly living expenses were $3,226.43. She receives Caitlyn's SSI benefit in the amount of $488.67 per month and $1,140 per month in child support. After deducting these amounts from Wife's monthly living expenses, she has a need for $1,597.76.

We now consider Husband's ability to pay. Prior to trial, he filed an income and expense statement reporting that he had a monthly net income of $3,945.50 and monthly expenses in the amount of $1,365. Subtracting Husband's monthly expenses from his monthly net income leaves him with a disposable income of $2,580 per month.[6] After subtracting the $1,140 per month he must pay in child support, his remaining income is $1,440.50. Thus, Husband has the ability to pay alimony. Husband argues that the

---

[6] The trial court found that Husband had a monthly disposable income of $2,301. This amount, however, reflects the amount Husband owed in pendente lite expenses ($1,218 related to the marital home and a pre-divorce monthly support payment of $1,083).

- 9 -

monthly net income of $3,945.50 includes his earnings from working overtime and that the trial court abused its discretion in determining his ability to pay based on this amount rather than his base pay without overtime. Thus, he asserts that the trial court should have awarded Wife less alimony. We respectfully disagree. It is well-settled in Tennessee that income earned from working overtime may be considered when making alimony determinations. *See Robertson v. Robertson*, 76 S.W.3d 337, 343 (Tenn. 2002); *Bailey v. Price*, No. M2009-01787-COA-R3-CV, 2010 WL 4939961, at *6 (Tenn. Ct. App. Dec. 2, 2010); *Nelson*, 106 S.W.3d at 24.

It is undisputed that Husband consistently worked overtime during the marriage and continued to do so throughout these proceedings. Husband presented evidence that his employer had taken away three weeks of his vacation and reduced his pay by seven and one-half percent four years prior to trial. The record, however, contains no evidence that Husband's employer reduced his overtime or no longer offered it. In light of the foregoing, it does not appear to us that the trial court applied an incorrect legal standard to the facts of this case or that its decision is against logic or reasoning. We, therefore, conclude that the trial court did not abuse its discretion in determining the amount of the alimony award based, in part, on Husband's income earned from working overtime.

## 2. Allocation of Marital Debt

Finally, Husband argues that the trial court abused its discretion because its allocation of the marital debt was inequitable. Specifically, he argues that most of the marital debt consisted of consumer credit card debt accumulated by Wife; therefore, Wife, not Husband, should be responsible for that debt.

This Court has rules governing the content of briefs in domestic relations cases involving challenges to a trial court's allocation of marital debt. Specifically, Rule 7 of the Rules of the Court of Appeals of Tennessee provides, in pertinent part, as follows:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's

decision regarding the classification, valuation, division, or allocation of the property or debt can be found.

Thus, in every case where a party challenges a trial court's allocation of marital debt, Rule 7 requires the challenging party to include a table in its brief that displays the debt values proposed by each party, the value assigned by the trial court, and the party to whom the trial court allocated the debt. *See Akard v. Akard*, No. E2013-00818-COA-R3-CV, 2014 WL 6640294, at *4 (Tenn. Ct. App. Nov. 25, 2014). In *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010), this Court explained the importance of a Rule 7 table as follows:

> [I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the *entire* distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

(Citations omitted).

In this case, Husband's brief does not contain a Rule 7 table. We have held on numerous occasions that a party's failure to comply with Rule 7 constitutes a waiver of all issues relating to the rule's requirements. *See, e.g. Akard*, 2014 WL 6640294, at *5; *Forbess v. Forbess*, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011); *Spurgeon v. Spurgeon*, No. M2004-00028-COA-R3-CV, 2005 WL 1390067, at *2 (Tenn. Ct. App. June 13, 2005). Although the Court may suspend the requirements of the rules for "good cause," we find no such cause in this case. *Harden*, 2010 WL 2612688, at *8.

### 3. Attorney's Fees

Wife requests that she be awarded her attorney's fees on appeal. Litigants are generally required to pay their own attorney's fees unless a statute or contract provision provides otherwise. *John Kohl & Co., P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998). Wife seeks attorney's fees pursuant to Tenn. Code Ann. § 36-5-103(c), which provides:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

When an appellate court considers a request for attorney's fees incurred on appeal, the court considers "the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010). After considering all the relevant factors in this case, we conclude that Mother is entitled to her attorney's fees incurred on appeal. We remand this case to the trial court to determine the appropriate amount of attorney's fees to which Wife is entitled.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Charles Joseph Tooley, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE